# EXHIBIT

# H


10-CV-05713-EXH


———————————[Space Above This Line For Recording Data]———————————

5578221

## LOAN MODIFICATION AGREEMENT
(Providing for an Initial Period of Adjustable Interest Only and an Adjustable Interest Rate Thereafter)

This Loan Modification Agreement ("Agreement"), made APRIL 28, 2008, between ADAM N EIFLING AND ANGELA M. EIFLING HUSBAND AND WIFE ("Borrowers") and National City Mortgage Co., a Subsidiary of National City Bank ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust or Deed to Secure Debt (the "Security Instrument"), dated JUNE 7, 2007 and recorded in PIERCE County, State of WASHINGTON (2) the Adjustable Rate Note ("Note") bearing the same date as, and secured by the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at

**5622 OLD STUMP DR NW**
**GIG HARBOR, WASHINGTON 98332**
(Property Address)

the real property described being set forth as follows:

**SEE ATTACHED LEGAL DESCRIPTION**

All capitalized terms defined in the Note will have the same meaning in this Agreement.

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

### 1. BORROWER'S PROMISE TO PAY

As of APRIL 28, 2008, the amount payable under the Note and the Security Instrument (the "Principal Balance") is NINE HUNDRED NINETY ONE THOUSAND FORTY ONE AND 82/100 DOLLARS (U.S. $991,041.82) consisting of the amount(s) loaned to the Borrowers by the Lender and any interest capitalized to date. The Borrowers promise to pay the Principal Balance, plus interest, to the order of the Lender.

### 2. INTEREST AND PAYMENTS

Effective MAY 1, 2008, interest will be charged on the Unpaid Principal Balance at the yearly rate of 7.625%, (the "Initial Interest Rate") until the first Change Date (defined below). The interest rate will change in accordance with Section 3 of this Agreement. The "Interest Only Period" will also begin on MAY 1, 2008. The Borrowers promise to make monthly payments of interest in the amount of U.S. $6,297.24 on the first day of each month during the Interest Only Period beginning JUNE 1, 2008, and monthly payments of principal and interest thereafter beginning JUNE 1, 2018 and continuing thereafter on the same day of each succeeding month until principal, interest and any other charges owed under the Note are paid in full. The amount of the monthly payment of interest only will change if Borrowers make a partial Prepayment. Changes in the amount of the monthly payment will reflect changes in the Unpaid Principal Balance of the loan and in the interest rate that the Borrowers must pay. The Note Holder will determine the new interest rate and the changed amount of the monthly payment in accordance with Section 3 of this Agreement. If on MAY 1, 2038 the Borrowers still owe amounts under the Note and the Security Instrument, as amended by this Agreement, the Borrowers will pay these amounts in full on that date, which is called the "Maturity Date." The Borrowers will make such payments at National City Mortgage Co., P. O. Box 1820, Dayton, OH 45401-1820 or at such other place as the Note Holder may require.

LOAN MODIFICATION AGREEMENT

5578221

### 3. INTEREST RATE CHANGES

**(A) Change Dates**

The interest rate the Borrowers will pay will be fixed at 7.625% for SIXTY (60) months. The interest rate Borrowers will pay may change on MAY 1, 2013 and on that day every 6th month thereafter. The date on which Borrowers' interest rate above could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based upon an Index. The "Index" is the based on the LIBOR (London Interbank Offered Rate) index, which Average of interbank offered rates for 6 month U.S. dollar-denominated deposits in the London market, as published in *The Wall Street Journal*.. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give the Borrowers notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate the new interest rate by adding TWO AND THREE-QUARTERS percentage point(s) (2.750%) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 3(D) below, this rounded amount will be the new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the Unpaid Principal that the Borrowers are expected to owe at the Change Date in full on the Maturity Date at the new interest rate in substantially equal payments. The result of this calculation will be the new amount of the monthly payments.

**(D) Limits on Interest Rate Changes**

The interest rate that the Borrowers are required to pay at the first Change Date will not be greater than 12.625% or less than 2.750%. Thereafter, the interest rate will never be increased or decreased on any single Change Date by more than ONE percentage point(s) (1.000%) from the rate of interest the Borrowers have been paying for the previous 6 months. The interest rate will never be greater than 12.625%.

**(E) Effective Date of Changes**

The new interest rate will become effective on each Change Date. The Borrowers will pay the amount of the new monthly payment beginning on the first monthly payment date after the Change Date until the amount of the monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to the Borrowers a notice of any changes in the interest rate and the amount of the monthly payment before the effective date of any change. The notice will include information required by law to be given to the Borrowers and also the title and telephone number of a person who will answer any question I may have regarding the notice.

2

5578221

4. The Borrower(s) also will comply with all other covenants, agreements, and requirements of the Note and Security Instrument, including without limitation, the Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that the Borrowers are obligated to make under the Security Instrument, including:

    (a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, and

    (b) all terms and provisions of any adjustable rate rider or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

※ 5. Nothing in this Agreement shall be understood or construed to be a satisfaction, release or novation in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and the Borrowers and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement.

5578221

Witness:_____    _____*Adam N Eifling*_____(Seal)
                                     ADAM N EIFLING              Borrower

Witness:_____    _____*Angela M Eifling*_____(Seal)
                                     ANGELA M EIFLING            Borrower

Witness:_____    _____(Seal)
                                                                 Borrower

Witness:_____    _____(Seal)
                                                                 Borrower

State of __WASHINGTON__

County of __PIERCE__

On __May 14, 2008__, before me, __Diana G. Scarpolini__ (notary public), personally appeared ADAM N EIFLING AND ANGELA M.EIFLING HUSBAND AND WIFE, (Borrowers) who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

(If acknowledged in the State of California, the following also applies:

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.)

WITNESS my hand and official seal.

_*Diana H Scarpolini*_
Notary Public in and for the State
of Washington residing at Lakewood
My Commission Expiration Date Is: __2/6/11__

5578221

Lender National City Mortgage Co.

Witness:_____    By:_____(Seal)
                                       Authorized Signature

Witness:_____    Its:_____
                                       (Authorized Representative Title)

------------------------------(Space Below This Line For Acknowledgments)------------------------------

STATE OF OHIO           )
                        ) ss.
COUNTY OF MONTGOMERY    )

BEFORE ME, a Notary Public in and for said County and State, personally appeared _____
_____ (Title) of National City Mortgage Co., an Ohio Corporation (Lender), who acknowledged that he/she did sign the foregoing instrument and that the same is the free act and deed of said Corporation and his/her free act and deed personally and as such officer.

IN WITNESS WHEREOF, I have hereunto set my hand, this _____ day of May, 2008.

_____
Notary Public

My Commission Expiration Date is:_____