The Honorable Ronald B. Leighton

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ADAM EIFLING (*Pro Se*) and ANGELA EIFLING (*Pro Se*),<br><br>  Plaintiffs,<br><br>  v.<br><br>NATIONAL CITY MORTGAGE, a division of National City Bank; PNC MORTGAGE, a division of PNC Bank, National Association; KONDAUR CAPITAL CORPORATION,<br><br>  Defendants | No. C10-5713-RBL<br><br>DECLARATION OF JONATHAN M. LLOYD IN SUPPORT OF PNC'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) |

Jonathan M. Lloyd declares as follows:

1. ***Identity of Declarant.***  I am a partner of Davis Wright Tremaine LLP, and am counsel in this matter to PNC Mortgage, a division of PNC Bank, National Association ("PNC Bank") and successor-by-merger to National City Mortgage, a division of National City Bank of Indiana ("National City" and, together with PNC Bank, "PNC").  I have personal knowledge of the facts stated in this declaration and am competent to testify to these matters.

2. ***Conditional Approval of National City/PNC Bank Merger***.  On or about October 27, 2009, the Office of the Comptroller of the Currency ("OCC") conditionally approved the merger of National City with and into PNC Bank.  The OCC's conditional approval letter is publically available at http://www.occ.gov/static/interpretations-and-precedents/nov09/ca928.pdf, and I attach a true and correct copy hereto as **Exhibit A** for ease of reference.

DECLARATION OF JONATHAN M. LLOYD
(C10-5713 RBL) - 1
DWT 16291975v1 0091657-000013

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

3. ***National City Merger Into PNC Bank***.  The merger closed less than two weeks later, on or about November 6, 2009, with PNC Bank acquiring all rights, title, and interest in Plaintiffs' Loan Documents.  I attach hereto as **Exhibit B** a true and correct copy of a November 16, 2009 press release discussing this merger, which is publicly available at http://pnc.mediaroom.com/index.php?s=43&item=660.

4. ***Foreclosure Sale***.  I attach as **Exhibit C** a true and correct copy of the Trustee's Deed recorded with the Pierce County Auditor, which evidences the foreclosure sale of the property securing Plaintiffs' loan on October 8, 2010.  The Trustee's Deed is publicly available on the Pierce County Auditor's website, which is located at http://hartweb.co.pierce.wa.us.

I declare under penalty of perjury of the laws of the State of Washington that the foregoing is true and correct.

DATED this 2nd day of February 2011, at Seattle, Washington.

/s/ *Jonathan M. Lloyd*
Jonathan M. Lloyd

DECLARATION OF JONATHAN M. LLOYD
(C10-5713 RBL) - 2
DWT 16291975v1 0091657-000013

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

## CERTIFICATE OF ELECTRONIC SERVICE

I hereby certify that on February 2, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

> Thomas R. Dreiling, *(Counsel for Defendant Kondaur Capital Corporation)*
> E-mail:  tom@tdlaw.net

and I hereby certify that a copy of this Notice was mailed via First Class United States Mail, postage prepaid, to the *pro se* plaintiffs, addressed as follows:

> Adam Eifling
> Angela Eifling
> 5622 Old Stump Drive NW
> Gig Harbor, WA  98332

DATED this 2nd day of February, 2011.

> Davis Wright Tremaine LLP
> *Attorneys for Defendant PNC Bank, National Association*
>
> By  /s/ Jonathan M. Lloyd
> Jonathan M. Lloyd, WSBA #37413
> 1201 Third Avenue, Suite 2200
> Seattle, Washington  98101-3045
> Telephone: (206) 622-3150
> Fax: (206) 757-7700
> E-mail: jonathanlloyd@dwt.com

DECLARATION OF JONATHAN M. LLOYD
(C10-5713 RBL) - 3
DWT 16291975v1 0091657-000013

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

# Exhibit A



Comptroller of the Currency
Administrator of National Banks

Northeastern District Office
340 Madison Avenue, 5th Floor
New York, New York 10173

Licensing Division
Telephone No.: 212.790.4055
Fax No.: 301.333.7015

October 27, 2009

**Conditional Approval #928
November 2009**

James S. Keller
Chief Regulatory Counsel
The PNC Financial Services Group, Inc.
249 Fifth Avenue
One PNC Plaza. 21st Floor
Pittsburgh, Pennsylvania 15222-2707

Re:  Application to merge National City Bank, Cleveland, Ohio, with and into PNC Bank, National Association, Wilmington, Delaware under the charter and title of the latter
Control No: 2009 NE 02 0017                         Charter No: 1316

Dear Mr. Keller:

The Office of the Comptroller of the Currency ("OCC") hereby conditionally approves the application to merge National City Bank, Cleveland, Ohio ("NCB") with and into PNC Bank, National Association, Wilmington, Delaware ("PNC Bank")[1] for the reasons and subject to the conditions and requirements set forth herein. This conditional approval is granted after a thorough evaluation of the application, other materials you have supplied and other information available to the OCC, including representations made in the application and by PNC Bank's representatives during the application process.

**The Proposal**

PNC Bank and NCB[2] are all wholly-owned subsidiaries of The PNC Financial Services Group, Inc. ("PNC").[3] PNC Bank is a national bank with its main office located in Wilmington, DE

---

[1] PNC Bank applied and received approval from the OCC to relocate its main office form Pittsburgh, PA to Wilmington, DE, effective August 21, 2009.

[2] The parent of NCB, National City Corporation, was acquired by The PNC Financial Services Group, Inc. on December 31, 2008. Therefore, NCB is a subsidiary of The PNC Financial Services Group, Inc.

[3] PNC is a financial holding company.

James S. Keller
Chief Regulatory Counsel
PNC Financial Services Group Inc.
Page 2

and has branches in District of Columbia, Florida, Indiana, Kentucky, New Jersey, New York, Ohio, Pennsylvania, Virginia, and West Virginia. NCB is a national bank with its main office located in Cleveland, Ohio and has branches in Florida, Illinois, Indiana, Kentucky, Maryland, Michigan, Missouri, Ohio, Pennsylvania, and Wisconsin. PNC Bank will not retain NCB's main office in Cleveland, Ohio as a branch of the resulting bank. However, PNC Bank will operate the branches of NCB as branches of the resulting bank.

**Legal Authority for the Merger**

PNC Bank has applied to the OCC for approval to merge with NCB under the charter and title of PNC Bank, pursuant to 12 U.S.C. §§ 215a-1, 1828(c) and 1831u. The home state of PNC Bank is Delaware and the home state of the target bank is Ohio, and so in this transaction two affiliated banks with different home states, under the Riegle-Neal Interstate Banking and Branching Efficiency Act of 1994 ("Riegle-Neal"), will merge. The OCC may not approve an interstate merger if the transaction involves a bank whose home state has enacted a law between September 29, 1994, and May 31, 1997, that expressly prohibits all mergers with all out-of-state banks. Both states have laws permitting interstate mergers.

The business combination of PNC Bank and NCB is legally authorized as an interstate merger transaction under the Riegle-Neal Act, 12 USC 215a-1 and 1831u(a), and the resulting bank is authorized to retain and operate offices of both banks under 12 USC 36(d) and 1831u(d)(1). In this regard, the OCC has determined that, with respect to the merger, the Act's age requirements applicable to the target bank, filing requirements, and requirements as to the capital adequacy of the banks involved in the merger, and management capabilities of the resulting bank are satisfied.[4]

**Bank Merger Act**

The OCC reviewed the proposed merger transactions under the criteria of the Bank Merger Act,[5] and applicable OCC regulations and policies. Among other matters, we found that the proposed transactions would not have any anticompetitive effects.[6] The OCC also considered the financial and managerial resources of the banks, their future prospects, and the convenience and needs of

---

[4] 12 U.S.C. § 1831u(a)(5), (b)(1) and (b)(4). The Act's concentration limits and expanded CRA requirements are not applicable to these transactions because they are among affiliated banks. As will be subsequently discussed, approval of the mergers is also consistent with the factors set forth in the Bank Merger Act and with the records of compliance of the parties with the Community Reinvestment Act.

[5] 12 U.S.C. § 1828(c).

[6] As previously noted, PNC Bank and NCB became affiliates on December 31, 2008.

James S. Keller
Chief Regulatory Counsel
PNC Financial Services Group Inc.
Page 3

the communities to be served. In addition, the Bank Merger Act requires the OCC to consider ". . . the effectiveness of any insured depository institution involved in the proposed merger transaction in combating money laundering activities . . ."[7] The OCC considered these factors and found them to be consistent with approval under the statutory provision.

**Community Reinvestment Act**

The Community Reinvestment Act ("CRA") requires the OCC to take into account the records of the institutions proposing to engage in a conversion or a merger in helping to meet the credit needs of the community, including low- and moderate-income ("LMI") neighborhoods, when evaluating conversion and merger applications.[8] The OCC considers the CRA Performance Evaluation of each institution involved in the transaction. A review of the records of these applicants, and other information available to the OCC as a result of its regulatory responsibilities, revealed no evidence indicating that the applicants' records of helping to meet the credit needs of their communities, including LMI neighborhoods, are less than satisfactory.

**Condition of the Approval**

This approval is subject to the following condition:

Following consummation and for a period of two years, PNC Bank is permitted to retain its investment in EFS Services Corporation. This investment must be terminated within the two-year period unless, within that time period, the OCC determines that this investment is permissible.

This condition of approval is a condition "imposed in writing by a Federal Banking Agency in connection with any action on any application, notice or other request" within the meaning of 12 U.S.C. § 1818. As such, the condition is enforceable under 12 U.S.C. § 1818.

**Consummation Requirements**

This conditional approval is granted based on our understanding that other applicable regulatory approvals, non-objections or waivers with respect to the proposed transaction will have been received prior to the merger.

As a reminder, the Northeastern District Licensing unit must be advised in writing 10 days in advance of the desired effective date for the conversion and merger so that the OCC may issue the necessary conversion authorization and merger certification letters.

---

[7] 12 U.S.C. § 1828(c)(11).

[8] 12 U.S.C. §§ 2903(a)(2) and 2902(3)(A) and (E); 12 C.F.R. § 25.29(a)(3) and (4).

James S. Keller
Chief Regulatory Counsel
PNC Financial Services Group Inc.
Page 4

If the merger transaction has not been consummated within twelve months from the approval date, the approval will automatically terminate unless the OCC grants an extension of the time period.

This approval and the activities and communications by OCC employees in connection with the filing do not constitute a contract, express or implied, or any other obligation binding upon the OCC, the United States, any agency or entity of the United States, or any officer or employee of the United States, and do not affect the ability of the OCC to exercise its supervisory, regulatory and examination authorities under applicable law and regulations. Our approval is based on the bank's representations, submissions, and information available to the OCC as of this date. The OCC may modify, suspend or rescind this approval if a material change in the information on which the OCC relied occurs prior to the date of the transaction to which this decision pertains. The foregoing may not be waived or modified by any employee or agent of the OCC or the United States.

If you have questions regarding this letter, please contact me or Senior Licensing Analyst Sandya Reddy at (212) 790-4055. Please reference the application control number in any correspondence.

Sincerely,

*signed*

J. Greg Parvin
Director for District Licensing

# Exhibit B

# News Releases
## PNC Completes First Phase of National City Conversion
### - Bank Announces Dates of Remaining Phases in 2010 -

PITTSBURGH, Nov. 16 /PRNewswire-FirstCall/ -- The PNC Financial Services Group, Inc. (NYSE: PNC) today announced it has successfully completed the conversion of 1.8 million customers and 240 branches from National City Bank to PNC Bank, with three additional conversion phases scheduled in early 2010.

The first phase was comprised of customers throughout western Pennsylvania (primarily Pittsburgh and Erie) along with Youngstown, Ohio, and the state of Florida. The branch locations opened as PNC Bank as scheduled on Monday, Nov. 9, after the weekend conversion activities were completed smoothly and minor issues for individual customers were resolved quickly.

"We wanted a seamless transition for our customers and I believe we have achieved that goal based on the teamwork of our employees and the investments being made," said Thomas K. Whitford, PNC vice chairman and co-leader of the National City integration. "The tremendous leverage we expected from this transaction is beginning to benefit customers and have a positive effect on our performance."

PNC also announced the dates and regions for the remaining phases of the conversion, which involves an additional three million customers and 1,100 branch locations, as follows:

- **February 2010**: state of Kentucky, southeastern Indiana, southern Ohio (including Cincinnati, Dayton and Columbus).
- **April 2010**: northern Ohio (including Cleveland, Akron and Toledo) and the state of Michigan.
- **June 2010**: remainder of Indiana along with the states of Illinois, Missouri and Wisconsin.

With eight conversions in the past five years, PNC has extensive experience and a strong track record with successful integrations, said Shelley Seifert, co-leader of the integration. Communications to customers begin 4-5 months before each conversion and are already under way for the second and third phases. The acquisition makes PNC the nation's fifth largest bank based on deposits and branches.

**Integration Progress Report**

PNC, which acquired National City on Dec. 31, 2008, remains on track with its two-year integration plan. Other accomplishments include:

- **Strong Performance**: The acquisition of National City was accretive to PNC's year-to-date earnings through the Third Quarter, ending Sept. 30, and is expected to be accretive for the full year.
- **PNC Mortgage**: The former National City Mortgage was rebranded as PNC Mortgage on Nov. 7. As one of the nation's top 10 residential mortgage originators and servicers, PNC provides a wide range of loans for first-time home buyers, those looking to refinance and other borrowers.
- **Bank Charters**: As part of the integration of the two banks, the charter of National City Bank was merged with and into PNC Bank, N.A. Customers in the remaining phases will continue to see the trade name of National City until their conversion dates. No other action is needed by customers.
- **Expense Reductions**: PNC also is on track to achieve its integration cost-savings goal. On an annualized basis, the company has already secured $660 million in cost savings against the two-year goal expected to exceed $1.2 billion.
- **Charitable Giving**: PNC and National City are expected to exceed $50 million in charitable contributions and community sponsorships by year-end 2009. This reflects PNC's strong corporate citizenship and commitment to build upon National City's legacy of outstanding community support.

The PNC Financial Services Group, Inc. (www.pnc.com) is one of the nation's largest diversified financial

services organizations providing retail and business banking; residential mortgage banking; specialized services for corporations and government entities, including corporate banking, real estate finance and asset-based lending; wealth management; asset management and global fund services.

CONTACTS:

MEDIA:
Brian E. Goerke
(412) 762-4550
corporate.communications@pnc.com

INVESTORS:
William H. Callihan
(412) 762-8257
investor.relations@pnc.com

SOURCE: The PNC Financial Services Group, Inc.

Web site: http://www.pnc.com/

# Exhibit C

F.A.T.C.O.
41-5-4076

201010200010   3   PGS
10/20/2010   08:30:00 AM   $64.00
PIERCE COUNTY, WASHINGTON

After Recording Return To:
Post Sale Dept.
Northwest Trustee Services, Inc.
P.O. Box 997
Bellevue, WA 98009-0997

File No.: 8299.20071/Eifling, Adam N. and Angela M.

## Trustee's Deed

The GRANTOR, Northwest Trustee Services, Inc., as present Trustee under that Deed of Trust (defined below), in consideration of the premises and payment recited below, hereby grants and conveys, without representation or warranty, expressed or implied, to Kondaur Capital Corporation, as GRANTEE, all real property (the Property), situated in the County of Pierce, State of Washington, described as follows:

Tax Parcel No.: 300064-0010 & 300001-0010

Abbreviated Legal: LOT 1, COUNTRY CLUB VISTA, REC. 200605245006 AND LOT 1, CANTERWOOD DIVISION SEVEN, REC. 9007240290

Parcel A:
Lot 1, Country Club Vista, according to the plat thereof recorded on May 24, 2000, under Recording No. 200005245006, records of Pierce County Auditor;

Parcel B:
An easement for private road and utility easement as granted in instrument recorded May 3, 2000, under Recording No. 200005030485, records of Pierce County Auditor;

Parcel C:
Lot 1, Canterwood Division Seven, according to the plat thereof reocrded July 24, 1990 under Recording No. 9007240290, records of Pierce County Auditor;

Situate in the County of Pierce, State of Washington.

RECITALS:

1. This conveyance is made pursuant to the powers, including the power of sale, conferred upon the Grantee by that certain Deed of Trust between Adam N. Eifling and Angela M. Eifling, husband and wife, as Grantor, to LandAmerica Transnation, as Trustee, and National City Mortgage a division of National City Bank, Beneficiary, dated 06/07/07, recorded 06/13/07, under Auditor's No. 200706130710, records of Pierce County, Washington.

4246757   2 PGS
10/20/2010   07:57:37 AM   KYOHN
EXCISE COLLECTED: $0.00   PROC FEE: $5.00
AUDITOR
PIERCE COUNTY, WA   TECH FEE: $5.00

2. The Deed of Trust was executed to secure, together with other undertakings, the payment of one or more promissory note(s) ("Note") in the sum of $1,000,000.00 with interest thereon, according to the terms thereof, in favor of National City Mortgage a division of National City Bank and to secure any other sums of money which might become due and payable under the terms of said Deed of Trust.

3. The Deed of Trust provided that the Property is not used principally for agricultural or farming purposes and the Grantor has no actual knowledge that the Property is used principally for agricultural or farming purposes.

4. Default having occurred in the obligations secured and/or covenants of the Deed of Trust grantor, as set forth in Notice of Trustee's Sale described below, which by the terms of the Deed of Trust make operative the power to sell, the thirty-day advance Notice of Default was transmitted to the Deed of Trust grantor, or his successor in interest, and a copy of said Notice was posted or served in accordance with law.

5. National City Mortgage a division of National City Bank, being then the holder or the nominee of the indebtedness secured by the Deed of Trust, delivered to said Grantor a written request directing Grantor to sell the Property in accordance with law and the terms of the Deed of Trust.

6. The defaults specified in the "Notice of Default" not having been cured, the Grantor, in compliance with the terms of the Deed of Trust, executed and on 05/05/10, recorded in the office of the Auditor of Pierce County, Washington, a "Notice of Trustee's Sale" of the Property under Auditor's File No. 201005050228.

7. The Grantor, in the "Notice of Trustee's Sale", fixed the place of sale as Outside of the 2nd floor entry plaza, on the west side of the County-City Building, 930 Tacoma Avenue South, City of Tacoma, State of Washington a public place, at 10:00 o'clock a.m., and in accordance with the law caused copies of the statutory "Notice of Trustee's Sale" to be transmitted by mail to all persons entitled thereto and either posted or served prior to 90 days before the sale; further, the Grantor caused a copy of said "Notice of Trustee's Sale" to be published in a legal newspaper in each county in which the property or any part thereof is situated, once between the thirty-fifth and twenty-eighth day before the date of sale, and once between the fourteenth and the seventh day before the date of sale; and further, included with the Notice, which was transmitted to or served upon the Deed of Trust grantor or his successor in interest, a "Notice of Foreclosure" in substantially the statutory form, to which copies of the Note and Deed of Trust were attached.

8. During foreclosure, no action by the Beneficiary, its successors or assigns was pending on an obligation secured by the Deed of Trust.

9. All legal requirements and all provisions of said Deed of Trust have been complied with, as to acts to be performed and notices to be given, as provided in chapter 61.24 RCW.

10. The defaults specified in the "Notice of Trustee's Sale" not having been cured ten days prior to the date of Trustee's Sale and said obligation secured by said Deed of Trust remaining unpaid, on October 8, 2010, the date of sale, which was not less than 190 days from the date of default in the obligation secured, the Grantor then and there sold the Property at public auction to said Grantee, the highest bidder therefore, for the sum of $560,000.00.

For reference only, not for re-sale.

This conveyance is made without representations or warranties of any kind, expressed or implied. By recording this Trustee's Deed, Grantee understands, acknowledges and agrees that the Property was purchased in the context of a foreclosure, that the trustee made no representations to Grantee concerning the Property and that the trustee owed no duty to make disclosures to Grantee concerning the Property, Grantee relying solely upon his/her/their/its own due diligence investigation before electing to bid for the Property.

DATED: October 18, 2010

GRANTOR
Northwest Trustee Services, Inc.

By _____
Assistant Vice President
Northwest Trustee Services, Inc.

STATE OF WASHINGTON  )
                     ) ss.
COUNTY OF KING       )

I certify that I know or have satisfactory evidence that **Jeff Stenman** is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument, on oath stated that (he/she) was authorized to execute the instrument and acknowledged (he/she) as the Assistant Vice President of Northwest Trustee Services, Inc. to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated: October 18, 2010

_____
NOTARY PUBLIC in and for the State of
Washington, residing at King Co.
My commission expires: 03/28/2011

S. L. BURNS
NOTARY PUBLIC
STATE OF WASHINGTON
COMMISSION EXPIRES
MARCH 28, 2011